PEOPLES ACCEPTANCE CORPORATION, APPELLEE, *v*
VAN EPPS ET AL., APPELLANTS.

[Cite as Peoples Acceptance Corp. v. Van Epps (1978),
60 Ohio App. 2d 100.]

(No. 376663—Decided October 26, 1978.)

*Mr. Sander Schwartz,* for appellee.
*Mr. Benjamin B. Sheerer,* for appellants.

STILLMAN, P. J., Defendants-appellants, Robert and Rebecca Van Epps, bought a 1968 Pontiac from third party defendant-appellee, Dealer's Outlet, on November 15, 1973. The purchase price of the Pontiac was $1,989. The Van Epps made a down payment of $589, $500 of which was obtained by means of a note which the Van Epps executed to Domestic Credit Corporation. The unpaid balance of $1,400 was secured by means of a cognovit note for $1,753.44. The Van Epps also signed a security agreement to guaranty the installment payments due on the Pontiac. The note was subsequently discounted to plaintiff-appellee, Peoples Acceptance Corporation.

Between November 15, 1973, and April of 1974, the Van Epps made four payments on the cognovit note, each for approximately $70. Presumably due to Mr. Van Epps' illness, the Van Epps fell behind in their payments in April of 1974. As a consequence, the Pontiac was repossessed on June 15, 1974, by Peoples Acceptance Corporation. The Van Epps were notified by Peoples Acceptance Corporation that the Pontiac would be sold on August 15, 1974, at 2 p.m., for a minimum bid of $200. The records kept by Peoples Acceptance Corporation disclose that the Pontiac was purchased at the sale for $200 by an unidentified party.

Thereafter, Peoples Acceptance Corporation filed a com-

plaint on September 26, 1974, in the Rocky River Municipal Court requesting judgment on the cognovit note. The court granted judgment upon the complaint on September 26, 1974. On May 15, 1975, the Van Epps moved the court to vacate its judgment and the motion was granted on May 30, 1975.

On June 17, 1975, the Van Epps filed an answer, counterclaim, and cross-complaint in response to the complaint filed by Peoples Acceptance Corporation. Dealer's Outlet was joined as a third party defendant on the crosscomplaint. Dealer's Outlet and Peoples Acceptance Corporation filed a joint reply and answer to the counterclaim and cross-complaint on October 15, 1975. Trial was had on November 15, 1975, and judgment was rendered in favor of Peoples Acceptance Corporation in the sum of $1,335.20.

The Van Epps filed a notice of appeal on December 15, 1975. Their appeal was dismissed by this court on March 10, 1977, pursuant to Civil Rule 54 (B) because the Rocky River Municipal Court had not disposed of either the Van Epps' counterclaim against Peoples Acceptance Corporation or their cross-complaint against Dealer's Outlet. In a subsequent journal entry dated March 11, 1977, the Rocky River Court ruled for Peoples Acceptance Corporation on the Van Epps' counterclaim and for Dealer's Outlet on the Van Epps' cross-complaint. On March 17, 1977, the Van Epps filed their appeal from the decision of March 11, 1977, assigning three errors:

"1. The Municipal Court erred in finding that Peoples Acceptance Corporation and Dealer's Outlet had met their statutory duties of good faith, diligence, reasonableness and care in the repossession and sale of the Van Epps' automobile. (Section 1301.02, ORC).

"2. The Municipal Court erred in holding that the sale of the Van Epps' automobile met standards of commercial reasonableness where said automobile was sold at a fraction of its purchase price and without diligent effort by Peoples Acceptance Corporation to secure bids for the automobile. (Section 1309.47, ORC).

"3. The Municipal Court erred in failing to find that the sale of the Van Epps' automobile by Peoples Acceptance Corpora-

tion to Dealer's Outlet was in essence self-dealing, not a bona fide sale, and hence commercially unreasonable. (Sections 1301.02 and 1309.47, ORC)."

This case is governed by the Ohio Uniform Commercial Code (R. C. 1301.02 *et seq.*) and presents a situation of fairly recurrent nature.

All three assignments of error argue basically that the sale after repossession of the 1968 Pontiac by Peoples Acceptance Corporation was not conducted in a commercially reasonable procedure as required by R. C. 1309.47.

R. C. 1309.47 provides for the secured party's right to dispose of collateral after a default in payment. Section (C) of the statute specifies the procedure to follow if the collateral is disposed of by public or private sale. It reads:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotation he may buy at private sale." (Emphasis added.)

In order to determine whether or not the sale of the 1968 Pontiac for $200 was commercially reasonable, we must establish which party bears the burden of proof.

One line of authority holds that the secured party must demonstrate that every aspect of the repossession sale was commercially reasonable. *Vic Hansen & Sons, Inc.* v. *Crowley*

(1973)), 57 Wis. 2d 106, 203 N.W. 2d 728; *First National Bank of Bellevue* v. *Rose* (1972), 188 Neb. 362, 196 N.W. 2d 507. *See also, Tauber* v. *Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E. 2d 180; *Universal C.I.T. Credit Co.* v. *Rone* (1970), 248 Ark. 665, 453 S.W. 2d 37; *Investors Acceptance Company of Livingston, Inc.* v. *Talcott, Inc.* (1969), 61 Tenn. App. 307, 454 S.W. 2d 130; *Mallicoat* v. *Volunteer Finance and Loan Corp.* (1966), 57 Tenn. App. 106, 415 S.W. 2d 347.

A second line of cases holds that once the secured party proves that a debt clearly exists even after the amount raised at the repossession sale has been credited to the debtor's account, the debtor has the duty of showing that the secured party should not recover a deficiency. *Pruske* v. *National Bank of Commerce of San Antonio* (Tex. Civ. Apps. 1976), 533 S.W. 2d 931; *First National Bank and Trust Company of Enid* v. *Holston* (Okla. 1976), 559 P. 2d 440; *Fryer & Willis Drilling Co.* v. *Oilwell, Division of United States Steel Corp.* (Tex. Civ. Apps. 1971), 472 S.W. 2d 857, reversed on other grounds, 493 S.W. 2d 487; *Ekman* v. *Mountain Motors, Inc.* (Wyo. 1961), 364 P. 2d 998.

In view of the fact that all of the proceedings are conducted by the creditor and that he alone knows the details of those proceedings, it is manifest that only he can establish the validity of the commercial transaction. We therefore conclude that the better rule requires the secured party to bear the burden of proving that the sale of the collateral is commercially reasonable and that the subsequent deficiency judgment is valid.

The standards which should be used to determine a commercially reasonable sale are matters of fairness and business practice. The secured party should always attempt to sell the repossessed collateral for the best price possible, and where there is a gross discrepancy between the disposal and the original sale price of the repossessed collateral, there must be some affirmative showing on the part of the secured party that the terms of the repossession sale were commercially reasonable.

Even before the adoption of the Uniform Commercial Code by the state of Ohio in 1962, Ohio courts have required that good faith be exercised in commercial transactions involving the disposal of collateral where the purchaser has

defaulted on his payments and the collateral has been repossessed. In *Mutual Finance Company* v. *Holian* (1941), 35 Ohio Law Abs. 134, this court considered a case strikingly similar to the instant action. There the automobile purchaser defaulted upon his obligation and the vehicle was repossessed. The mortgagee telephoned three or four used car dealers and offered the car to them at wholesale price. One dealer did purchase the auto for a little more than half of the original selling price paid by the mortgagor approximately two months earlier. The mortgagee sought and obtained a deficiency judgment. Judge Skeel, speaking for a unanimous court, declared that the burden was upon the mortgagee to show that he had obtained the highest possible price upon resale of the automobile: "The duty of a mortgagee in exercising the power of sale provided for in the mortgage is to act in good faith, in absolute fairness and use every reasonable means at his disposal to obtain the full value of the mortgaged property." *Mutual Finance Co.* v. *Holian, supra* at 136. *See also, Clark* v. *Studebaker Corp.* (1929), 35 Ohio App. 54.

In *Central Budget Corporation* v. *Garrett* (1975), 48 A.D. 2d 825, 368 N.Y. Supp. 2d 268, the court determined upon appeal that the price for which a vehicle is sold after repossession is one of the "terms" which must be considered in determining whether or not a sale is commercially reasonable as required by the Uniform Commercial Code. The sale had been advertised once in the Journal of Commerce and was attended by five or six persons, most of whom may have been employees of the secured party. The vehicle was sold for less than one-fifth of the original sale price, which the court held to be commercially unreasonable.

Similarly, in *Miles* v. *N. J. Motors* (1975), 44 Ohio App. 2d 351, the court held that where the only public notice given of the sale of a repossessed car by a vendor of automobiles consisted of written notice to the defaulting purchaser and where no public auction was conducted despite the advice that such an auction would be undertaken, fundamental requirements that commercial transactions be conducted in good faith and in a reasonable manner were violated.

In the instant case, there is evidence that the purchase price of the Pontiac at the repossession sale was grossly inadequate and that no effort was made by Peoples Acceptance

Corporation to secure a fair price for the Pontiac at the repossession sale.

The Van Epps paid $1,989 for their 1968 Pontiac in November 1973. Exactly seven months later, their car was repossessed. Two months thereafter, the Pontiac was sold for $200. The record is devoid of any testimony regarding the condition of the car or its fair market value at the time of the repossession sale. Mr. Weiner, directing officer of both Dealer's Outlet and Peoples Acceptance Corporation, testified that the Pontiac was sold for salvage value to an unrecorded party, but he was unable to produce evidence demonstrating that the Pontiac was, in fact, junked or that it possessed no substantial fair market value at the time of the sale. Mr. Weiner also stated that the minimum bid figure of $200 was based upon his determination as to what the wholesale rather than the retail value of the Pontiac was. The sale of the Pontiac on August 15, 1974, was not advertised, nor was it generally advertised along with the other autos offered for sale by Dealer's Outlet.

In summary, in the absence of any evidence that the Pontiac had significantly depreciated in the seven months during which the Van Epps owned it, it was sold at the repossession sale for little more than one-tenth of the original purchase price paid by the Van Epps. Van Epps consequently established a *prima facie* case of commercial unreasonableness, which Peoples Acceptance Corporation was under a duty to refute by demonstrating its efforts to secure the best possible price for the Pontiac. The foregoing evidence, however, only serves to strengthen Van Epps' position, since absolutely no attempt was made to obtain competitive bids for the Pontiac. Moreover, because Mr. Weiner acted as the director of both Dealer's Outlet and Peoples Acceptance Corporation, the possibilities of self dealing are too great to be ignored. *Central Budget Corp.* v. *Garrett, supra.*

Although there is no requirement that the secured party sell at either retail or wholesale prices upon repossession, he is under a duty to obtain the best price possible. *Vic Hansen & Sons, Inc.* v. *Crowley, supra,* involved an auto dealer who sold an auto which was repossessed upon default and was then "sold" back to the seller at the repossession sale ostensibly at the wholesale price, which was significantly less than

the amount for which the auto was sold one month earlier. The Supreme Court of Wisconsin held that the sale was commercially unreasonable especially in light of the fact that the seller was in the business of marketing cars and could have sold the collateral for a higher price at retail. The court stated that:

"Plaintiff's office manager testified that plaintiff took used automobiles in at wholesale to sell at retail and make money. Such a practice has no place in a private sale of debtor's collateral in that the plaintiff, as secured party, owes the duty to the defendants to use reasonable efforts to obtain the best price to protect the debtors' interest. The secured party should not 'make money' from the sale of the debtors' collateral." *Id.* at 114, 203 N.W. 2d 733.

The instant case presents a situation nearly identical to that addressed in the *Vic Hansen* case. It is clear that Mr. Weiner acted in his own self-interest by not obtaining the best possible price for the Pontiac. First, because the lower the price of the Pontiac after repossession, the higher the amount of the resulting deficiency judgment. Secondly, although there is no direct evidence in the record to indicate that the Pontiac was sold back to Dealer's Outlet after repossession as the appellants suggest in their third assignment of error, we nevertheless recognize the fact that Mr. Weiner was in a position to purchase the pontiac at salvage value and resell it at retail price for a substantial profit. There is some evidence which suggests that Mr. Weiner had in the past sold repossessed vehicles back to Dealer's Outlet on various occasions, including the 1968 Pontiac which is the subject of this case. Plaintiff's exhibit "H" establishes the fact that prior to the Van Epps' purchase of the Pontiac, it was sold and repossessed under circumstances similar to those in the present case, and despite the fact that the record is silent as to whom the Pontiac was sold after repossession in October 1973, we can infer that Dealer's Outlet purchased the same since it owned and sold that Pontiac to the Van Epps approximately one month thereafter.

We conclude that the sale of the repossessed Pontiac for $200 was commercially unreasonable in that Peoples Acceptance Corporation utterly failed to demonstrate that it had made a good faith effort to sell the pontiac for the highest

possible price, thereby reducing or altogether eliminating the necessity for a deficiency judgment. We therefore find each of the assignments of error meritorious and accordingly reverse the deficiency judgment granted to the appellee.

This case is reversed insofar as the deficiency judgment for $1,335.20 against defendants-appellants is concerned. The lower court's ruling on March 11, 1977, regarding defendants-appellants' counterclaim and cross-complaint shall remain in full force and effect.

*Judgment reversed.*

PRYATEL, and DAY, J J., concur.