HUNTINGTON NATIONAL BANK, APPELLEE, *v.* ELKINS, APPELLANT.

(No. 87AP-504 — Decided October 13, 1987.)

*Porter, Wright, Morris & Arthur* and *Waymon B. McLeskey II,* for appellee.

*Leslie Varnado, Jr.,* for appellant.

REILLY, J.   This is an appeal by defendant, Dorothy Elkins, from an order of the Franklin County Munici-pal Court granting summary judgment in favor of plaintiff, the Huntington National Bank, in the amount of $4,691.89, plus costs and interest.

The record shows that on April 7, 1986, defendant purchased a 1984 Dodge from Graham Ford, Inc. The total cost of the car was $10,444.34. Defendant, while on the business premises of Graham Ford, Inc., executed a promissory note and security agreement payable to plaintiff in the amount of $7,876.75 to finance the purchase. It is undisputed that defendant had no direct contact with plaintiff concerning the note and security agreement until after the purchase was consummated.

Defendant, being unable to maintain monthly payments, voluntarily returned the car to plaintiff on October 3, 1986. Notice was mailed to defendant by plaintiff on October 6, 1986 informing her that the repossessed car would be sold at a public sale on November 5, 1986. The notice listed the time and address of the sale.

The pending sale was also advertised on October 26, 1986 in the Columbus Dispatch. The advertisement listed the time and location of the public sale, the motor vehicles to be sold, the terms of sale, the auctioneers' names, and the time when the motor vehicles would be available for inspection by prospective purchasers. The car was subsequently sold on November 5, 1986 for $2,850.

Plaintiff thereafter commenced an action against defendant for the deficiency and obtained a summary judgment on May 8, 1987.

Defendant timely perfected this appeal, advancing three assignments of error:

"1. The Franklin County Municipal Court erred in finding there was no genuine issue as to any material fact in granting plaintiff-appellee's motion for

summary judgment through its decision of May 8, 1987.

"2. The Franklin County Municipal Court erred in finding that Chapter 1317 of the Revised Code has no application to the notice requirements in the instant case.

"3. The Franklin County Municipal Court erred in finding that the plaintiff-appellee's sale of the repossessed 1984 Dodge complied with the provisions of Ohio Revised Code 1309.47 as to commercial reasonableness."

The first and third assignments of error are interrelated and will be considered together. The second assignment of error is determined first.

Defendant alleges error in the trial court's conclusion that R.C. Chapter 1317 is inapplicable to the facts in this case. R.C. Chapter 1317 includes the Retail Installment Sales Act (hereinafter "RISA") which regulates various aspects of consumer transactions. RISA directs the actions to be taken by a secured creditor in disposing of repossessed collateral after default by a retail buyer. Defendant asserts that the facts herein are within the scope of RISA. Thus, plaintiff was bound to adhere to the notice requirements of R.C. 1317.12 and 1317.16.

RISA mandates that, within five days after taking possession of collateral upon default by a debtor in a consumer transaction, a secured party must send a notice to the debtor "* * * setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure his default. * * *" R.C. 1317.12. Failure to send the required notice results in the loss of the secured party's right to recover the repossession costs and to obtain a deficiency judgment.

Moreover, at least ten days before a secured party disposes of the repossessed collateral, notification of the time and place of the sale and the minimum price for the goods sold, together with a warning that the debtor may be held liable for any deficiency, must be sent to the debtor. R.C. 1317.16. This notice may be combined with the R.C. 1317.12 notice.

It is undisputed by plaintiff that the notice sent to defendant concerning the repossession and subsequent sale of the car did not meet fully the requirements of either R.C. 1317.12 or 1317.16. Plaintiff contends, however, that it was not bound by the notice provisions of RISA.

R.C. 1317.12 requires the sending of the notice only "* * * if collateral for a consumer transaction is taken possession of by the secured party on default * * *." Further, notice must be sent under R.C. 1317.16 only when a secured party takes a security interest pursuant to R.C. 1317.071, which states:

"No retail seller, in connection with a retail installment contract *arising out of a consumer transaction,* shall take any security interest other than as authorized by this section." (Emphasis added.)

Manifestly then, in order for the notice provisions to adhere, a consumer transaction must be involved. R.C. 1317.01(P) defines "consumer transaction," in pertinent part, as:

"* * * [A] sale, lease, assignment, or other transfer of an item of goods, or a service, *except those transactions between persons, defined in section* * * * *5725.01 of the Revised Code, and their customers* * * * to an individual for purposes that are primarily personal, family, or household." (Emphasis added.)

R.C. 5725.01 contains the definition of "financial institution." It is undisputed that plaintiff is a financial institution. Therefore, plaintiff's actions in providing financing for the purchase of the car fit squarely within the excep-

tion noted above for "transactions between [financial institutions] and their customers."

It is emphasized that we are not deciding that the facts presented herein did not constitute a consumer transaction. It is reasonable to infer that the essence of defendant's dealings with Graham Ford, Inc. was indeed a consumer transaction. Thus, our conclusion is confined to the relationship between plaintiff and defendant.

Furthermore, as stated above, R.C. 1317.16 applies only to a secured party pursuant to R.C. 1317.071 which in turn applies to "retail sellers." A "retail seller" is defined by R.C. 1317.01(I) as a "seller who is a party to a retail installment sale." R.C. 1317.01(H) further defines "seller" as "a person who sells or agrees to sell goods." Notwithstanding any arrangement that may exist between plaintiff and Graham Ford, Inc., plaintiff was definitely not a "retail seller" but a lender.

Defendant propounds yet another argument in opposition to considering the parties' relationship as that of a financial institution and its customer. Specifically, as defendant did not deal directly with plaintiff in obtaining financing, defendant was not truly a "customer" of a financial institution.

The term "customer" is not defined in R.C. Chapter 1317. Nonetheless, "Exhibit A," attached to plaintiff's complaint, is a promissory note and security agreement running directly between plaintiff and defendant. As "Exhibit A" comprises the only contract or agreement in evidence before us, we are compelled to conclude that defendant was in fact a customer of plaintiff, regardless of where the note may have been signed. The note discloses that the loan proceeds were to be paid directly to Graham Ford, Inc.

Moreover, the same argument was propounded and rejected under nearly identical facts in *Euclid Natl. Bank* v. *Hodge* (Dec. 12, 1985), Cuyahoga App. No. 49705, unreported, wherein the court held that a debtor is a customer of a bank "* * * when a dealer's customer signs documents (security agreement, promissory note) providing for financing *by a separate financial institution* of the transaction between the customer and the seller. Such signing clearly makes the dealer's customer also a customer of the bank. The fact that the loan proceeds are sent directly to the dealer does not alter this conclusion, because the bank's customer, in this case appellant, explicitly authorizes this arrangement in writing. * * *" (Emphasis *sic.*) *Id.* at fn. 2.

See, also, *Meeks* v. *Fifth Third Bank* (Dec. 18, 1985), Hamilton C.P. No. A8409907, unreported; *Shane* v. *Fifth Third Bank* (Apr. 11, 1987), Hamilton M.C. No. 85CV29594, unreported.

Thus, statutory construction of R.C. Chapter 1317 leads to the conclusion that when financial institutions make direct loans to retail buyers, they are not bound by the notice provisions of RISA, even when the loan proceeds are channeled directly to the retail seller.

This reasoning is consistent with the approach taken by other courts within the state. In *Butz* v. *Society Natl. Bank of Miami Valley* (S.D. Ohio 1987), 83 Bankr. 459, the District Court for the Southern District of Ohio overruled the findings and conclusions of the bankruptcy judge in deciding that the transactions at issue were not governed by RISA. The plaintiff in *Butz,* trustee in bankruptcy for bankrupt debtors, had sought to recover a penalty from the defendant for its failure to comply with the notice requirement of R.C. 1317.16. The debtor

had purchased automobiles, signed installment loan notes and security agreements in favor of defendant, authorized defendant to disburse the loan proceeds directly to the automobile dealers, and then defaulted on the notes. In finding RISA inapplicable, the *Butz* court recognized that defendant was merely a lender and not a "retail seller."

Similarly, the court in *Euclid Natl. Bank* v. *Hodge, supra,* rejected defendants' assertion that RISA governed the bank's conduct under facts substantially indistinguishable from this case because the bank neither engaged in a "consumer transaction" nor acted as a "retail seller." See *Lake Natl. Bank* v. *Galliher* (Oct. 22, 1982), Lake App. No. 9-055, unreported; *Meeks* v. *Fifth Third Bank, supra; Shane* v. *Fifth Third Bank, supra; Blon* v. *Bank One, Akron, N.A.* (Oct. 29, 1986), Summit App. No. 12580, unreported, reversed on other grounds (1988), 35 Ohio St. 3d 98, 519 N.E. 2d 363.

This transaction differs from the situation where the seller itself has financed the sale and then transferred or assigned the installment note and security agreement to a third party, usually a financial institution. In the latter instance, the applicability of RISA has been generally assumed, and the issue becomes merely whether the provisions were violated. *Huntington Natl. Bank* v. *Stockwell* (1983), 10 Ohio App. 3d 30, 10 OBR 38, 460 N.E. 2d 303 (assignee-bank's compliance with RISA at issue); *Bank One of Columbus, N.A.* v. *Childers* (Dec. 23, 1981), Franklin App. No. 81AP-395, unreported (assignee-bank's compliance with RISA at issue). The rationale is that the assignee has obtained its security interest through a retail seller in connection with a retail installment contract rather than directly from the buyer. See *Butz* v. *Society Natl. Bank*

(Bankr. S.D. Ohio 1983), 28 Bankr. 731, proposed order overruled (S.D. Ohio 1987), 83 Bankr. 459.

Finally, defendant maintains that the inclusion of a preservation of defenses clause on the installment note indicates that the transaction is governed by RISA. The clause, which is mandated by Section 433.2, Title 16, C.F.R., provides that any holder of the note is subject to any claim or defense which could be asserted against the seller, thus eliminating the protection of holder-in-due-course status.

Effective August 1, 1980, R.C. 1317.01(Q) (RISA) was amended to include "purchase money loan," defined as follows:

" 'Purchase money loan' means a cash advance that is received by a consumer from a creditor in return for a finance charge * * *, which is applied in whole or substantial part to a consumer transaction with a seller, who either:

"(1) Cooperates with the creditor to channel consumers to the creditor on a continuing basis;

"(2) Is affiliated with the creditor by common control, contract, or business arrangement."

The 1980 amendments added the words "purchase money loan" to only two sections: R.C. 1317.031 and 1317.032, both of which relate to preservation of defenses by a buyer as against a holder in due course. Amended R.C. 1317.14 probably also encompasses "purchase money loans" within its revised "any other agreement" language.

However, as noted by plaintiff, there is no indication that the legislative intent was to render every RISA provision applicable to "purchase money loans." Assuming the transaction herein meets the definition of a "purchase money loan," then it appears that only those sections mentioned above are pertinent. Hence, no

violation of the notice provisions of R.C. 1317.12 and 1317.16 occurred as those sections are inapplicable to this case.

Defendant's second assignment of error is not well-taken.

In defendant's first and third assignments of error, she alleges that the sale of the car was commercially unreasonable.

Defendant asserts that a genuine issue of material fact exists as to the condition of the car upon repossession and subsequent resale. Thus, she contends that summary judgment was improperly granted in favor of plaintiff on the issue of commercial reasonableness since the car's condition obviously was directly relevant to the price obtained. The low price for which the car sold is the basis of defendant's argument.

When the affirmative defense of commercial unreasonableness of a repossession sale is raised, the secured party then carries the burden of proof on the issue. *United States* v. *Willis* (C.A.6, 1979), 593 F. 2d 247; *Liberty Natl. Bank of Fremont* v. *Greiner* (1978), 62 Ohio App. 2d 125, 16 O.O. 3d 291, 405 N.E. 2d 317.

Consequently, plaintiff submitted an affidavit from a Huntington staff officer, who stated, in pertinent part, that:

"* * * [T]he 1984 Dodge was sold at public sale on November 5, 1986 at 9:30 a.m. at the Ohio Banc Auction, Inc. in Grove City for the sum of $2,850.00. The vehicle condition report attached as Exhibit A [to plaintiff's motion for summary judgment] and the advertisement of the public sale attached as Exhibit B are true and accurate copies of what they purport to be. As indicated on the vehicle condition report, the N.A.D.A. wholesale value of the 1984 Dodge when repossessed was $3,675.00.

"* * * The records show that the motor vehicle was dropped off at the branch on or about October 3, 1986. The defendant was sent notice of sale letters on or about October 6, 1986. * * *"

According to the vehicle condition report, the damages included a "fair scrape" on the right rear fender and a "poor" left front fender. The condition of the left front fender was further explained in sworn affidavits by two Huntington field representatives who inspected the car. Both affiants stated that it appeared that someone had attempted to pound out the dents, fill them with putty and then paint over the damage.

Defendant's affidavit states that there were no dents or scrapes on either the right rear fender or left front fender at the time she returned the car. The vehicle condition report is dated October 3, 1986, which is apparently the same day the car was returned.

R.C. 1309.47 governs the disposition of collateral by a secured party after a debtor has defaulted. Subsection (C) of the statute mandates that "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable."

The focus of defendant's argument as to the unreasonableness of the sale is the price obtained upon sale. She contends that the discrepancy between the purchase price of the car, $10,444.34, and the price realized from the repossession sale only seven months later, $2,850, raises a question of fact as to the sale's commercial reasonableness. *Peoples Acceptance Corp.* v. *Van Epps* (1978), 60 Ohio App. 2d 100, 14 O.O. 3d 75, 395 N.E. 2d 912.

Summary judgment may be granted pursuant to Civ. R. 56(C) only if it is determined that:

"* * * (1) No genuine issue as to

any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

It is plain from the affidavits that a genuine issue of material fact exists as to the condition of the car when it was returned. The car's condition would necessarily be an important factor in the price realized upon sale. Thus, the commercial reasonableness of the sale could not be decided as a matter of law in favor of plaintiff.

Plaintiff alleges that the adequacy of the price obtained by the sale of collateral can never be the sole determinant of the sale's commercial reasonableness under R.C. 1309.50(B). Defendant, however, is not disputing the time or method of sale, but the condition of the car, which presumably led to an unreasonably low purchase price.

In sum, summary judgment is improper as reasonable minds could come to a conclusion other than that the sale was commercially reasonable.

The first and third assignments of error are well-taken.

Defendant's second assignment of error is overruled. Defendant's first and third assignments of error are sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH, P.J., and WHITESIDE, J., concur.