## Dartmouth Plan, Inc. v. Haerr
*[Cite as 8 AOA 112]*

*Case No. 8-89-25*
*Logan County, (3rd)*
*Decided December 4, 1990*

John L. Ross, 127 1/2 South Main Street, Bellefontaine, Ohio 43311, for Appellant.

Ellen Hammond, 527 South High Street, Columbus, Ohio 43215, for Appellee.

BRYANT, J.

This is an appeal from a Money Judgment of the Court of Common Pleas of Logan County entered in favor of appellee and against appellant on an installment purchase agreement.

Appellant purchased a swimming pool from Krystal Klear Sales and Service, Inc., to be installed at her home. The transaction was memorialized by an installment agreement requiring appellant to pay the purchase price and finance charge totalling $14,267.88 in monthly installments of $169.32 each. This contract, later assigned by Krystal Klear to Dartmouth Plan, Inc., was drawn on a form provided by the latter company.

Although the contract copy given appellant disclosed no security for the purchase price, the original assigned to Dartmouth purported to grant to the holder a mortgage on appellant's house.

Learning of the mortgage, appellant sought its release by appellee, which release was accomplished. Thereafter, appellant defaulted in her payments. Appellee accelerated payment as provided by the agreement and sued appellant to recover the balance remaining due.

At trial, it was Mrs. Haerr's contention that she had rescinded the contract. The court rejected this argument because subsequent to her attempted rescission, Mrs. Haerr made two additional installment payments. In ordering judgment, the trial court stated that, regardless of the actions indicated concerning the mortgage lien, the parties intended to enter into a contract and that contract remains valid and binding on the parties. The court found that Mrs. Haerr could not rely upon R.C. chapter 1345 to avoid payment of the indebtedness to a supplier because Dartmouth was not a supplier, but an assignee of the contract who provided financing for the supplier. Therefore, any unconscionable actions claimed by appellant to have been committed by the supplier, Krystal Klear were not attributable to Dartmouth, its assignee. The court entered judgment against Appellant Joy E. Haerr in the amount of $10,918.70 plus interest and court costs.

It is from this judgment that appellant now appeals asserting as her only assignment of error:

"THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF-APPELLEE WAS NOT SUBJECT TO THE PROVISIONS OF OHIO REVISED CODE SECTIONS 1345.02 AND 1345.03, UNDER THE RATIONALE THAT APPELLEE CANNOT BE CONSIDERED AS A SUPPLIER FOR PURPOSES OF THOSE SECTIONS."

R.C. 1345.02 states:

"(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction. ***"

R.C. 1345.03 states:

"(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction. ***"

For liability to attach under either of these two sections, the transaction upon which the claim is based must be a consumer transaction in an action brought against a supplier. A con-

sumer transaction is defined in R.C. 1345.01(A) as:

"'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitations to supply any of these things. 'Consumer transaction' does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers; ***"

Specifically excluded from this definition are those transactions between a customer and a dealer of intangibles. R.C. 5725.01(B) defines a dealer of intangibles as:

"*** every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness ***."

Dartmouth is engaged in the activities of lending money and exchanging evidences of indebtedness and, therefore, is a dealer of intangibles whose actions fall squarely within the above quoted exception to R.C. 1345.01(A). *Brown v. Willard* (1977), 5 O.O 3d 195, 196. Appellant thus failed to prove a consumer transaction between her and appellee. Moreover, "supplier" is defined by R.C. 1345.01 as:

"(C) 'Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."

We agree with the trial court that Dartmouth, a mere assignee of the installment obligation, is not a supplier within the meaning of R.C. 1345.01(C).

R.C. 1345.01(C) defines a supplier as an assignor not an assignee although Ohio courts have found assignees to be suppliers in certain circumstances. Generally, those circumstances are ones where the assignee is in the business of attempting to enforce payment of the debt for a supplier, i.e. a collection agency. The courts deem such assignments as part of and effecting the consumer transaction. See *Celebrezze v. United Research* (1985), 19 Ohio App. 3d 49, 51. *Liggins v. The May Company* (1975), 73 O.O. 2d 306, 308.

Although Dartmouth's extension of credit did effect the transaction between Krystal Klear

and Haerr, its connection to this transaction is too attenuated to fall within the scope of the statutory definition of a supplier. Further, the contract obligation was not assigned to Dartmouth for enforcement, but as a purchase of a security by it in its general business practice. Therefore, Dartmouth cannot even be deemed to fall within the expanded definition of a supplier.

Appellant also urges the application of the Retail Installment Sales Act ("RISA"), specifically R.C. 1317.031, as an additional statute by which Appellee may incur liability. R.C. 1317.031 states that a buyer who executes a retail installment contract in connection with a consumer transaction may assert against an assignee, specifically a holder in due course, any defense the buyer may assert against the seller. See *Huntington National Bank v. Elkins* (1987), 43 Ohio App. 3d 64; *Allis v. Herbolt* (1984), 17 Ohio App. 3d 230, 238. Appellant argues that R.C. 1317.031 read in conjunction with R.C. 1345.09 gives a consumer the right to rescind a contract for fraudulent or deceptive conduct where the present holder of the contract is a holder in due course. Assuming *arguendo* that these sections are applicable and to be read in the manner suggested by Appellant, it is still the finding of the trial court that no rescission occurred. The court found that Appellant had no intention to rescind and merely wanted the mortgage on her home released. As there is credible evidence in the record to support the court's factual finding, it's judgment will not be reversed on appeal. *Perkins v. Gosche* (September 14, 1990), Seneca App. No. 13-89-15, unreported. See, also *C.F. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

Appellant has failed to establish those factors necessary to find liability under R.C. chapter 1345, specifically that there was a consumer transaction and that Dartmouth was a supplier or that a rescission of the contract occurred. Therefore, we hold Appellant's assignment of error to be without merit and overrule it.

*Judgment affirmed.*

SHAW, P.J., and EVANS, J., concur.