**In re Vern D. OTT, Debtor.**

No. 00–32556.

United States Bankruptcy Court,
N.D. Ohio.

April 19, 2002.

Richard J. Szczepaniak, Toledo, OH, for Debtor.

Anthony B. DiSalle, Toledo, OH, trustee.

U.S. Trustee Office, Cleveland.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after an Evidentiary Hearing on the Debtor's Objection to a Proof of Claim submitted by the Fahey Bank. For purposes of the hearing, it was submitted that the proof of claim filed by the Fahey Bank was comprised of two separate components: a larger unsecured claim for Three Hundred Seventeen Thousand Six Hundred Three dollars ($317,603.00), the amount of which represents the deficiency balance on a secured loan; and a smaller secured claim for Fifty-nine Thousand Three Hundred Twenty-one and 41/100 dollars ($59,321.41), which was secured against business assets of the Debtor, including, but not necessarily limited to a security interest in the assignment of a patent developed by the Debtor. The Debtor has objected to these claims on what are essentially two different grounds. First, with respect to the deficiency portion of the claim, the Debtor asserts that the Fahey Bank did not dispose of its collateral in a commercially reasonable manner. Of particular importance in this regard, the Debtor claims that he did not receive any notice from the Fahey Bank concerning the sale of the collateral. As for the latter claim, the essence of the Debtor's objection is that, with respect to the loan, he should not be charged with any interest or other charges because the Fahey Bank has repeatedly refused to accept payment on the debt. The facts relevant to these objections are briefly as follows:

The Debtor was the owner of a bowling alley in Marion, Ohio. To finance this business, the Debtor, on various occasions, obtained loans from the Fahey Bank. In 1993, after defaulting on his various obligations with the Fahey Bank, the Debtor signed a "Forbearance Agreement" with the Fahey Bank. The relevant provisions set forth therein provided that the Debtor and his wife were personally liable on two loans previously made by the Fahey Bank: a loan for Fifty-seven Thousand Seven Hundred Fifteen and 51/100 dollars ($57,715.51) (Loan No. 46297–91527) which is now the secured claim asserted by the Fahey Bank; and a loan for One Hundred Seventy Thousand Four Hundred Seventy and 40/100 dollars ($170,470.40) (Loan No. 35870–92174) which represents the deficiency claim now asserted by the Fahey Bank. As collateral for these loans, the Debtor granted a security interest in all inventory, merchandise, raw materials, work in process, supplies, goods, equipment, machinery, furnishings and other personal property of the bowling business. In addition, as collateral for both loans, the Debtor granted a security interest on the assignment of a patent he had previously developed.

In April of 1997, while the Debtor was again in default on his obligations to the Fahey Bank, a fire caused extensive damage to the bowling alley. Thereafter, the Debtor, after filing an insurance claim, received approximately Three Hundred Seventy-five Thousand dollars ($375,000.00) for the loss. The Debtor then used these proceeds to pay various bills of the bowling business and to buy a recreational vehicle. In addition, the Debtor, as he had done on past occasions, also attempted to pay off his smaller loan with the Fahey Bank (Loan No. 46297–91527). The Debtor explained that his primary motive for attempting to pay off this loan was to have the Fahey Bank release its security agreement in his patent so as to enable him to obtain additional financing. The Fahey Bank, however, on all occasions, refused to

accept payment because, pursuant to the above-stated Forbearance Agreement, it considered its security interest in the Debtor's patent collateralized with respect to both of its loans. In this regard, it is the contention of the Fahey Bank that the Debtor made its payment of the smaller loan (Loan No. 46297–91527) contingent upon the release of its security interest in the Debtor's patent. As support for this position, a letter from the Debtor's legal counsel was introduced, which stated therein that, as a condition precedent to the Fahey Bank negotiating the checks earmarked for the smaller loan (Loan No. 46297–91527), the loan documents associated with the loan must be marked paid in full. (Debtor's Exhibit 2). In addition, a similar letter, dated July 31, 1995, was shown from the assignee of the Debtor's patent, who had also offered to pay off the smaller loan (No. 46297–91527). (Debtor's Exhibit 9).

After the Debtor again defaulted on his loan obligations in 1997, the Fahey Bank, pursuant to its rights under its security agreements, commenced legal proceedings to sell all of the equipment held by the bowling alley. The total price eventually received for the equipment, which was sold at a public auction, was Eight Thousand Three Hundred Seventy-six and 14/100 dollars ($8,376.14); this left a deficiency of Three Hundred Seventeen Thousand Six Hundred Three dollars ($317,603.00) with respect to the larger loan (No. 35870–92174). The Debtor, however, contends that the Fahey Bank did not sell the equipment in a commercially reasonable manner. In particular, the Debtor contends that the selling price of the "pinsetters" at the bowling alley, which were sold on October 20, 1999, was significantly below their fair market value. In addition, the Debtor contends that he never received notice, either oral or written, of the sale, as is required under both Ohio law

and those loan agreements entered into between the Parties. In this regard, the loan documents presented to the Court revealed that any notice provided by the Bank was to be mailed to the Debtor. In opposition to these points, representatives of the Fahey Bank introduced evidence that, given considerations such as the damage caused by the fire, they realized the optimal price for the "pinsetters." In addition, representatives of the Fahey Bank testified that, on more than one occasion, the Debtor was given notice, both oral and written, of the sale. In particular, Carl Hughes, the Bank's president, testified that he personally gave notice to the Debtor of the pending sale. Similarly, Martin Hughes, a member of the Bank's Board of Directors, testified that he personally informed the Debtor of the pending sale. In addition, testimony was given that written notice of the pending sale was provided to the Debtor. No documentary evidence, however, was introduced to substantiate this latter assertion. Nevertheless, as support for this latter assertion, the Fahey Bank testified to the fact that it is standard operating procedure to send written notice of any sale to a debtor whose property is to be affected by the sale.

## LEGAL DISCUSSION

■ Concerning the validity of the claims submitted by the Fahey Bank, the Court's analysis is limited to two legal issues which will now be addressed in order. First, with respect to the larger loan (Loan No. 35870–92174), the issue presented is whether the Fahey Bank is entitled to maintain a deficiency claim against the Debtor. The second issue the Court will address is whether the Fahey Bank, by refusing to accept payment with respect to the smaller loan made to the Debtor (Loan No. 46297–91527), is still entitled to all accumulated interest and other charges

now included in the outstanding balance of the loan. As resolution of these issues concern the allowance or disallowance of claims against the estate, 28 U.S.C. § 157(b)(2)(B) defines this proceeding as a "core proceeding" over which this Court has the jurisdictional authority to enter final orders.

Section 1309.47[1] provides that as a condition precedent to a creditor maintaining a deficiency claim against a debtor, it must be established that the sale of the collateral was done in a commercially reasonable manner. *See, e.g., Horizon Savings v. Wootton,* 73 Ohio App.3d 501, 503, 597 N.E.2d 1150, 1152 (1991). As a part of disposing collateral in a commercially reasonable manner, paragraph C of O.R.C. § 1309.47 provides that notification of any sale must be sent to the debtor. In this case, it is the Debtor's contention that he did not receive any notice, oral or written, concerning the Fahey Bank's sale of the equipment associated with the bowling alley. As a result, the Debtor contends that the deficiency claim of the Fahey Bank for Three Hundred Seventeen Thousand Six Hundred Three dollars ($317,603.00) should not be allowed.

■ The manner in which notice of a sale must be provided is set forth in O.R.C. § 1309.47(C), which provides:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor if he has not signed after default a statement re-

nouncing or modifying his right to notification of sale.

The burden of proof is placed upon the creditor, as the entity in charge of the sale, to establish that these requirements have been met. *Horizon Savings v. Wootton,* 73 Ohio App.3d 501, 503, 597 N.E.2d 1150, 1152 (1991); *see also Peoples Acceptance Corp. v. Van Epps,* 60 Ohio App.2d 100, 104, 395 N.E.2d 912, 915–16 (1978); *First Nat'l. Bank v. Turner,* 1 Ohio App.3d 152, 155, 439 N.E.2d 1259, 1263 (1981).

■ As the above language reveals, all that is required for a creditor to establish that the requisite notice requirements of O.R.C. § 1309.47(C) have been met, is for the creditor to demonstrate that notice of the sale was "sent" to the debtor. In this regard, it is well-established under Ohio law that proof that the debtor actually received the notice is not necessary. *Ford Motor Credit Co. v. Potts,* 47 Ohio St.3d 97, 99, 548 N.E.2d 223, 226 (1989). In support of its compliance with the standard set forth in O.R.C. § 1309.47(C), as well as to those provisions contained in its own loan agreements with the Debtor, the Fahey Bank testified that written notice of the sale of its collateral was sent to the Debtor. In fact, according to the testimony of the Fahey Bank, notice of any sale that it conducts is automatically sent to a debtor whose property is to be affected by the sale. With respect to this assertion, however, the Fahey Bank was not able to introduce any documentary evidence to support its position. In addition, when questioned on the matter, the Fahey Bank offered no viable explanation as to why such documentation did not exist. Therefore, in the absence of such evidence, the Court must presume that, in violation to

---

1. On July 1, 2001, O.R.C. § 1309.47(C) was repealed and replaced with those provisions set forth in Revised Article 9. However, since all the events giving rise to this matter tran- spired prior to July 1, 2001, the Court will apply O.R.C. § 1309.47(C) to the facts of this case.

its own loan agreements with the Debtor, no written notice was actually sent to the Debtor concerning the sale of the collateral associated with the Debtor's bowling alley. *See* BANK.R.EVID. 1002 and 1004. The question thus now becomes whether the failure to provide written notice is fatal to the Fahey Bank's deficiency claim against the Debtor.

 The language of O.R.C. § 1309.47(C), by utilizing the word "sent," seems to imply that a written document is always required to satisfy the notice requirement of the statute. Notwithstanding, the Supreme Court of Ohio has held that in some instances a written notice, for purposes of O.R.C. § 1309.47(C), is not absolutely necessary. *Umbaugh Pole Building Co. v. Scott*, 58 Ohio St.2d 282, 291, 390 N.E.2d 320, 325 (1979). Specifically, in *Umbaugh Pole* the Ohio Supreme Court, in paragraph 2 of its syllabus, stated:

> Although written notice is preferable under R.C. 1309.47, the fact that notice is oral will not as a matter of law be insufficient, but is to be considered as one of the facts in deciding whether the notice was reasonable.

*Id.* at 282, 390 N.E.2d at 321. For purposes of this holding, the issue of whether notice was reasonable is a question of fact to be determined in light of the surrounding circumstances.

In addressing the reasonable notice requirement of O.R.C. § 1309.47(C), an underlying fact of this case clearly goes against any finding that any oral notice provided by the Fahey Bank could be considered reasonable. In particular, it is observed that the Fahey Bank, through its own loan agreements, provided that it would provide the Debtor with written notice of any sale—i.e., the Fahey Bank provided that any notice would be mailed. Additionally, this Court, as the following

will explain, also has trouble reconciling the facts of this case with those present in *Umbaugh Pole*.

In *Umbaugh Pole*, the Ohio Supreme Court held that the particular type of instance where a written notice is not required occurs when "[u]nder the circumstances, written notice would be surplusage and would call for an adherence to a ritual." *Id.* at 291, 390 N.E.2d at 325. Thus, in *Umbaugh Pole*, the Supreme Court of Ohio found that a creditor was not required to provide written notice to a debtor when there was substantial participation by the debtor in the sale process. In particular, in *Umbaugh Pole* the following facts were not in dispute: the debtor had at least two weeks advanced notice of the sale; the sale date was agreed to by the debtor and the auctioneer; the sale of the collateral was on the debtor's premises; the debtor arranged the collateral subject to the sale; and the debtor was present during the sale. Based upon the rather unique circumstances of this case, however, subsequent cases interpreting the allowance of oral notice, as set forth in *Umbaugh Pole*, have done so on a very narrow basis. For example, in *Miami Valley Production Credit Ass'n v. Hastings*, 42 Ohio App.3d 125, 536 N.E.2d 1177 (1985), the debtors, who were in bankruptcy, acquiesced to the surrender of their collateral to the creditor. However, despite the apparent cooperation between the debtors and the secured creditor, the court held that the most that could be inferred from the facts "is that the [debtors] no doubt realized that the [creditor] would at some time dispose of the collateral. But this knowledge, without more, falls short of the notice required by R.C. 1309.47(C), i.e., notice sufficient to enable the debtor to affirmatively protect his interest." *Id.*

at 127, 536 N.E.2d at 1179. Thus, on this basis, the court, in finding notice insufficient for purposes of O.R.C. § 1309.47(C), held that the facts of the case were "clearly distinguishable from those in *umbaugh* [sic]." *Id.* at 127, 536 N.E.2d at 1180. Similarly, in *NCR Universal Credit Union v. Kleinberg*, 1990 WL 40632 *2 (Ohio App. 2nd Dist.), the court distinguished the facts of its case from those in *Umbaugh Pole* on the basis that there was nothing that suggested that the debtor knew the date her property would be sold if she failed to redeem it. *See also Shaffer Leasing, Inc. v. Nakkon*, 1992 WL 362461 *3 (Ohio App. 5th Dist.); *BancOhio Nat'l Bank v. Quito*, 1992 WL 50038 *4 (Ohio App. 4th Dist.).

▪ Thus, taken together, what the above decisions show is that for oral notice to be reasonable, a debtor, although not actually having to participate in the sale process, must be given every opportunity to do so. This, at the very least, requires that the debtor be imparted, as is provided for in the statute, with knowledge as to the time and place of the forthcoming sale of the collateral. *See also Trustcorp Bank of Ohio v. Lytten*, 68 Ohio App.3d 208, 212–213, 587 N.E.2d 954, 956–57 (1990) (notice must state with specificity time and place of sale). In this respect, the Debtor has denied having ever received any notice concerning the sale of the Bank's collateral. Such testimony, of course, is very self serving, and thus standing alone cannot be accorded a great amount of evidentiary weight. Several considerations, however, do lend support to the fact that even if the Debtor was informed of the sale of his bowling equipment, the Debtor was not actually imparted with notice as to the exact time and place of this sale.

▪ To begin with, it is entirely clear that, unlike the situation in *Umbaugh Pole*, the Debtor was not an active participant in the sale process. In fact, it is the perception of this Court that, given the deteriorating relationship between the Debtor and the Fahey Bank, the Debtor was, to the extent possible, excluded from the sale process. In addition, the Court questions why the Debtor, who vehemently contested the eventual sale price of the "pinsetters," was not present at the sale so as to protect his interest in the collateral. Stated directly to the point, had the Debtor actually been imparted with notice as to the time and place of the sale of the collateral, it would seem to follow that the Debtor would have attended the public sale of the collateral so as to protect his interest therein. Along this line, the Court notes that the underlying purpose of the notice requirement of O.R.C. § 1309.47(C) is to provide the debtor with the "opportunity to bid at the sale or otherwise take measures to reduce their potential liability in the event of a deficiency." *Am. Seaway Foods, Inc. v. Belden S. Assoc. L.P.*, 72 Ohio St.3d 514, 518, 651 N.E.2d 941, 944 (1995).

▪ Thus, based upon the above considerations, the Court, although finding it a close call, is not persuaded that the Fahey Bank has carried its burden of establishing that it provided adequate notice of the sale of the bowling equipment to the Debtor. In coming to this decision, the Court again reiterates that the Fahey Bank failed, according to the terms of its own loan agreements with the Debtor, to provide the Debtor with written notice of the sale. In addition, even if the Debtor did receive oral notice of the sale, such notice, by not notifying the Debtor the exact time and place of the sale, did not provide the Debtor with a sufficient opportunity to protect his interest in the collateral. As such, this is not the type of situation contemplated by the Supreme

Court of Ohio in *Umbaugh Pole* where written notice would have been simply surplusage. Therefore, it is the decision of this Court that the Fahey Bank has failed to establish its compliance with the notice requirement of O.R.C. § 1309.47(C). Accordingly, the Court must disallow the deficiency claim asserted by the Fahey Bank for Three Hundred Seventeen Thousand Six Hundred Three dollars ($317,603.00) (Loan No. 35870–92174).[2]

The next and final issue to address in this case is whether the Fahey Bank is entitled to the full amount of its secured claim of Fifty-nine Thousand Three Hundred Twenty-one and 41/100 dollars ($59,321.41) (Loan No. 46297–91527). In this regard, the Debtor has, in substance, asserted that accruing interest and any other charges should be disallowed because the Fahey Bank refused to accept payment on the loan.

 It is a basic principle of commercial law that in order to terminate, under a contractual obligation, all future interest and costs, a tender of payment must be both for the entire amount of the obligation and it must be unconditional; that is, it cannot be predicated upon the creditor surrendering a potential legal right in order to accept the amount offered. *See generally Desselle v. Moreauville State Bank,* 553 So.2d 1067, 1070 (La.App. 3rd Cir.1989), *writ denied,* 558 So.2d 584 (1990); *Allen v. Retirement System for Justices and Judges,* 769 P.2d 1302, 1307 (Okla.1988). Pursuant to this principle, evidence was presented in this case which would indicate that the Debtor had conditioned payment of its secured loan on the Fahey Bank releasing its security interest in the Debtor's patent. In particular, a reasonable person reading those correspondences from the Debtor's attorney, as well as from the assignee of the Debtor's patent, would conclude that the receipt of such a payment was conditioned upon the Fahey Bank relinquishing its security interest in the Debtor's patent. The Debtor, however, had no legal right to make such a demand, because in 1993 he had signed a forbearance agreement which effectively cross-collateralized, with respect to both loans made by the Fahey Bank, the security interest held by the Fahey Bank in his patent. As a result, the Fahey Bank was entitled to refuse payment on the loan while at the same time imposing upon the Debtor any interest and other charges allowed by contract and law. Accordingly, for this reason, the Court will allow, with respect to its loan number 46297–91527, the Fahey Bank to maintain a secured claim against the assets of the Debtor's bankruptcy estate for Fifty-nine Thousand Three Hundred Twenty-one and 41/100 dollars ($59,321.41).

In reaching the conclusions found herein, the Court has considered all of the

---

**2.** Ohio law provides that if a secured party fails to comply with the requirements of O.R.C. § 1309.47(C), the appropriate value of the collateral is presumed to equal the amount securing the indebtedness. O.R.C. § 1309.47(B)(2)(c); O.R.C. § 1309.47(B)(2)(d). The secured party, however, may rebut this presumption by introducing some credible evidence of a lower appropriate value. O.R.C. § 1309.47(B)(2)(d). If a secured party does this, the value of the collateral is then set at an amount equal to the actual proceeds received from the sale of the collateral, unless the debtor establishes that a greater amount would have been realized if the secured party had complied with O.R.C. § 1309.47(C). O.R.C. § 1309.47(B)(2)(e). With respect to this statutory scheme, the only credible evidence that this Court has regarding the value of the collateral is the sale price received therefrom. O.R.C. § 1309.47(B)(2)(d), however, specifically states "[e]vidence of the amount of the actual proceeds of the disposition is not, of itself, sufficient to rebut the presumption." Accordingly, pursuant to O.R.C. § 1309.47(B)(2)(d), the Court must deny the Fahey Bank any deficiency claim against the Debtor.

evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the deficiency claim asserted by the Fahey Bank for Three Hundred Seventeen Thousand Six Hundred Three dollars ($317,603.00), be, and is hereby, DISALLOWED; and that the secured claim asserted by the Fahey Bank for Fifty-nine Thousand Three Hundred Twenty-one and 41/100 dollars ($59,321.41) (plus any charges permitted under 11 U.S.C. § 506(b)), be, and is hereby, ALLOWED.