VANNOY, Appellee,

v.

CAPITAL LINCOLN–MERCURY SALES, INC. et al., Appellants.

[Cite as *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138.]

Court of Appeals of Ohio,
Ross County.

Nos. 1868, 1871.

Decided June 2, 1993.

*Alfred E. Baerkircher*, for appellee.

*Thomas M. Spetnagel*, for appellant Capital Lincoln–Mercury Sales, Inc.

*Porter, Wright, Morris & Arthur* and *Michael J. Barren*, for appellant BancOhio National Bank.

---

STEPHENSON, Judge.

This case involves several appeals taken from judgments entered by the Municipal Court of Chillicothe, Ohio, in the action commenced by Linda S. Vannoy, plaintiff below and appellee herein, against Capital Lincoln–Mercury Sales, Inc. ("Capital") and BancOhio National Bank ("BancOhio"), defendants below and appellants herein. Capital assigns the following errors for our review:

"I. The lower court erred in finding that Capital Lincoln–Mercury committed a deceptive act or practice by failing to provide replaced parts to appellee.

"II. The lower court erred in holding Capital Lincoln–Mercury liable for attorney fees.

"III. The lower court erred in finding that the subject 'attorney's fee' clause violates the Retail Installment Sales Act and thus renders the note unenforceable.

"IV. The lower court did not err in finding that Capital Lincoln–Mercury is not liable to BancOhio on BancOhio's cross-claim."

The following assignments of error are presented by BancOhio:

"I. The trial court erred in finding that the note is illegal and unenforceable by virtue of the inclusion therein of an 'attorney's fee' clause.

"II. The trial court erred in rendering a money judgment against BancOhio.

"III. The trial court erred in holding BancOhio liable for costs and attorney's fees.

"IV. The trial court erred in finding that Vannoy is not liable to BancOhio on BancOhio's counterclaim.

"V. The trial court erred in finding that Capital Lincoln–Mercury is not liable to BancOhio on BancOhio's cross[-]claim.

"VI. The trial court erred in ordering rescission of the transaction."

The record reveals the following facts pertinent to this appeal. On April 6, 1987, appellee entered into a sales contract whereby she agreed to purchase a 1982 Oldsmobile Cutlass from Capital for the price of $5,995. Appellee financed the acquisition through BancOhio and executed a note to BancOhio in the principal amount of $6,267.72 together with interest at the rate of 10¾ percent to be payable in monthly installments of $161.23 beginning the following month. The automobile had mechanical problems from the outset and a number of repairs were required. Appellee put approximately twenty thousand additional miles on the vehicle but ceased making loan payments after two installments.

On August 31, 1987, appellee commenced the action below against Capital and BancOhio, alleging violations of the retail installment sales provisions of R.C. Chapter 1317, the Magnuson–Moss Warranty Act, codified at Section 2301 *et seq.*, Title 15, U.S.Code, and consumer protection regulations for automobile repairs. There were also averments of deceptive sales practices and breach of warranty. Appellee sought judgment for, *inter alia*, compensatory, incidental and consequential damages as well as restitution of all previous loan payments, treble damages and attorney fees.

Appellants both filed answers denying liability and asserted a number of defenses against those claims. On November 18, 1987, BancOhio filed a counterclaim against appellee, alleging a default on the note and seeking judgment thereon. Appellee filed a reply which stated, among other things, that the note was not enforceable against her and therefore she was not liable on its default. BancOhio also filed a cross-claim against Capital, seeking indemnification from the dealership for any damages adjudicated against it on the original complaint or for any damages which it failed to recover from appellee on the counterclaim. Capital replied and denied any such derivative liability to BancOhio.

As a result of numerous continuances, the matter did not come on for trial until August 18, 1989, and January 5, 1990. An agreement was reached by the parties after trial that appellee would release the 1982 Oldsmobile Cutlass to BancOhio, which would then dispose of the property and credit her account with the net proceeds therefrom. There is no further mention in the record of such a disposition or the remaining balance, if any, due BancOhio on the loan.

A final resolution of this case would take two more years. On January 10, 1992, the lower court entered judgment finding (1) that an attorney fee provision

in the note to BancOhio was illegal and, therefore, it was unenforceable and appellee was entitled to a refund of payments previously made thereon, and (2) that Capital had failed to return old parts to appellee following repair of the automobile and thereby violated certain consumer protection regulations. In addition to damages, the court ruled that it would award attorney fees and ordered the parties to submit affidavits addressing that issue. The court also ruled against BancOhio on its cross-claim, holding that the bank's liability, and the unenforceability of the note, arose from the use of its own forms.[1]

Appellee filed affidavits to the effect that her counsel had expended 22.50 hours in the preparation and trial of this matter and that a reasonable fee for such cases would be $90 per hour. Thus, appellee concluded, her counsel should be awarded $2,025 in fees, together with sundry litigation costs. On March 16, 1992, the lower court entered final judgment awarding those costs and $2,000 in attorney fees. This appeal followed.[2]

We begin our review of this case by considering the first and fourth assignments of error advanced by BancOhio, and the third error assigned by Capital, wherein it is argued that the trial court erred in finding appellee's note to be unenforceable. The court's decision was based on a portion of that note which warns that "[i]f we [BancOhio] sue to collect any amount you owe us, we may charge you for court costs and attorney fees *where permitted by law.*" (Emphasis added.) The lower court reasoned that the attorney fee provision was illegal under Ohio law and, therefore, that the note was unenforceable.

It is a well established principle of law that a provision in a note for payment of attorney fees upon default thereof is contrary to public policy and void. *Miller v. Kyle* (1911), 85 Ohio St. 186, 97 N.E. 372, paragraph one of the syllabus.

---

1. The lower court's judgment of January 10, 1992 never expressly resolved BancOhio's counterclaim for default on the note. However, given the court's determination that the note was unenforceable, we construe the entry as an implicit judgment against BancOhio on this issue.

2. The initial notices of appeal in this case were filed to the January 10, 1992 judgment entry. This was error. The judgment of the lower court deferred the issue of attorney fees for later decision and, therefore, was not a final order for purposes of R.C. 2505.02. See, *e.g., Pickens v. Pickens* (Aug. 25, 1992), Meigs App. No. 459, unreported, at 4, 1992 WL 209498; *State ex rel. Van Meter v. Lawrence Cty. Bd. of Commrs.* (Aug. 26, 1992), Lawrence App. No. 91CA25, unreported, at 7, 1992 WL 208960; *Baker v. Eaton Corp.* (Dec. 10, 1990), Stark App. No. CA–8235, unreported, 1990 WL 200296. This sort of an interlocutory order is not independently appealable. 4 Ohio Jurisprudence 3d (1978) 141, Appellate Review, Section 52. Subsequent notices of appeal were then properly filed by both appellants from the March 16, 1992 final judgment. The appeal brought by BancOhio (case No. 1868) and the one brought by Capital (case No. 1871) are hereby consolidated, *sua sponte,* for purposes of this decision under App.R. 3(B). See *State v. Lewis* (1990), 70 Ohio App.3d 624, 626, 591 N.E.2d 854, 856, at fn. 2; *McCoy v. Hines* (Oct. 17, 1990), Adams App. Nos. 495 and 497, unreported, at fn. 1, 1990 WL 155771.

However, it is one thing to hold that a single provision in an instrument is void and it is quite another to hold that the entire instrument is unenforceable. There must be some further basis beyond a general prohibition against these provisions to support the drastic action taken below. Appellee and the lower court appear to rely on portions of the Retail Installment Sales Act ("RISA"), which outlines the permissible fees and charges that may be extracted from buyers on a retail installment contract and forbids any other fee from being charged. See R.C. 1317.07. Any charges in excess of those permitted by law will render the contract unenforceable. R.C. 1317.08. Appellee now argues that the provision for attorney fees in her note is not a permitted charge under R.C. 1317.07 and, therefore, that the lower court properly found the note to be unenforceable. We disagree.

The execution of the note to BancOhio was, at most, a "consumer transaction."[3] Consumer transactions are sales, leases, assignments or other transfers of goods except in those transactions between persons defined, *inter alia*, by R.C. 5725.01 and their customers. R.C. 1317.01(P). Included within this exception are "financial institutions" which lend money and receive customer deposits. R.C. 5725.01(A). It follows that financial institutions, or banks, are not generally involved in consumer transactions within the regulatory purview of RISA. In short, R.C. Chapter 1317 will not apply to financial institutions engaged in the sort of lending activities involved in the case at bar. This court has so held on occasion, see *BancOhio Natl. Bank v. Quito* (June 21, 1990), Ross App. No. 1527, unreported, at 2–4, 1990 WL 85209; as have a number of other courts throughout the state. See, *e.g., Huntington Bank v. Freeman* (1989), 53 Ohio App.3d 127, 128–129, 560 N.E.2d 251, 253–254; *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 63, 571 N.E.2d 442, 444; *Mullen v. Fifth Third Bank* (1988), 43 Ohio App.3d 69, 70, 539 N.E.2d 683, 684; see, also, *Star Bank v. Unruh* (June 12, 1992), Montgomery App. No. 13143, unreported, 1992 WL 131428; *Hunting-*

---

**3.** The provisions of R.C. 1317.07 apply only to retail installment contracts executed in connection with a retail installment sale. A "retail installment contract" is one which is executed in connection with a "retail installment sale." R.C. 1317.01(L). Thus, the applicability of RISA in this case comes down to the determination of whether there has been a "retail installment sale" between appellee and BancOhio. A "retail installment sale" includes every retail installment contract for the sale of specific goods, every sale of specific goods where the price may be paid in installments and every "consumer transaction" in which the price may be paid in installments. R.C. 1317.01(A). In that there was no sale of goods between BancOhio and appellee, R.C. 1317.01(C)(1), the loan below could be characterized as a "retail installment sale" only if it was a "consumer transaction." A consumer transaction generally involves the transfer of goods or performance of a service. R.C. 1317.01(P). As discussed below, the loan between BancOhio and appellee is not a consumer transaction. The difficulty in harmonizing bank lending and the RISA provisions have prompted courts to consider these not as retail installment sales but as "financial transaction[s] with [a] financial institution." *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 63, 571 N.E.2d 442, 444.

*ton Natl. Bank v. Elkins* (1987), 43 Ohio App.3d 64, 539 N.E.2d 1135. Thus, RISA does not apply in this instance and the attorney fee clause will not render the note unenforceable.

■ Our conclusion on this issue is further buttressed by considering that the contract provides for payment of attorney fees upon default only "where permitted by law." Thus the issue presented herein is the significance to be given this language. We note that there has been little in the way of reported decisions directly on point. The available options in resolving this issue are either to construe the language of the note in light of the statute and the protection which it is meant to afford, or, as appellee suggests, to simply ignore the precatory language, interpret the contract as absolutely requiring payment of attorney fees and, thereafter, ruling it to be unenforceable. Obviously, the former is more in line with the maxims of contract interpretation.

It is well settled that the law in existence when a contract is formed enters into the contract and becomes a part of the agreement, thereby requiring the contract to be construed in light of the law. *Holbrook v. Ives* (1886), 44 Ohio St. 516, 524, 9 N.E. 228, 232. Furthermore, "[c]ourts are required, by the application of known rules of law, to enforce valid and reasonable contracts of parties, with the view of carrying out their clear intent, rather than, *by resort to technical construction, to render such contracts void.*" (Emphasis added.) *Rock v. Monarch Bldg. Co.* (1912), 87 Ohio St. 244, 252, 100 N.E. 887, 889. We hold that the phrase "where permitted by law" in the contract *sub judice* means exactly what it says: that the retail buyer agrees to pay the attorney fees upon default in those jurisdictions where enforcement of such a provision is permitted by law. As noted above, such a provision is void in Ohio. *Miller, supra,* at paragraph one of the syllabus. However, such a provision may be enforceable elsewhere.[4]

Thus, the covenant that a retail buyer would pay a seller's attorney fees upon default *where permitted by law* refers to the law of each particular jurisdiction. In jurisdictions such as Ohio where these provisions are void, they are merely excluded from the contract. This interpretation follows the rule that courts must, when possible, construe a contract to be consistent with the law in existence at the time of its execution. To construe it otherwise, to mean that the contract required payment of the seller's attorney fees by the retail buyer in default, would not only ignore the language used therein, but also would be an unduly technical construction of the contract, the result of which would be to render it void under R.C. 1317.08. Such a result would violate the rules of construction set forth in *Rock, supra.*

---

4. The law in most jurisdictions is that such a provision is valid and enforceable. 17 American Jurisprudence 2d (1964), Contracts, Section 164.

In sum, the attorney fee clause in the note between appellee and BancOhio does not render that instrument unenforceable. The lower court erred in so ruling and, accordingly, the first and fourth assignments of error by BancOhio are sustained, as is the third assignment of error by Capital. BancOhio may proceed with enforcing the note. At the August 1989 hearing, appellee stipulated a principle loan balance remaining of $8,242.58 and evidence was introduced to show a *per diem* interest charge of $1.79. The record indicates that, since the hearing, the Oldsmobile Cutlass was to have been sold and the proceeds therefrom credited to appellee's account. There is no further mention of a sale, or any reduction in the principal loan balance, shown in the record. Accordingly, this matter will be remanded to the trial court for a determination of damages to enter on the counterclaim.

We now turn to the bank's second and third assignments of error, which state that the lower court erred in entering judgment against it for money damages, attorney fees and costs. These items must be examined individually. First, we direct our attention to the money damages awarded. After determining that the attorney fee clause rendered the note unenforceable, the trial court ordered that appellee recover the $305.83 in loan payments she had previously made to BancOhio. An additional $200 in damages was then awarded to appellee after it was determined that Capital had violated regulations promulgated under the state's Consumer Sales Practices Act ("CSPA"). Appellants were then made jointly and severally liable for the sum total of these amounts, or $505.83. BancOhio argues on appeal that it should not be held liable on that judgment. We agree.

■ It has already been determined that the attorney fee clause in the note from appellee to BancOhio did not violate RISA and did not render the instrument unenforceable. Thus, appellee is not entitled to the return of the $305.83 in previous payments on the loan. There is also no legal basis for holding the bank liable for a violation of the CSPA. Regulations make it "a deceptive act or practice" in a consumer transaction for a supplier to "[f]ail to tender to the consumer any replaced parts." Ohio Adm.Code 109:4–3–13(C)(13). Any failure to obey this rule was occasioned by Capital rather than BancOhio. Moreover, consumer transactions under the CSPA do not include transactions between financial institutions and their customers. R.C. 1345.01(A) and 5725.01(A). A bank engaged in such lending activities is exempted from R.C. Chapter 1345 and its accompanying regulations. *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 100, 519 N.E.2d 363, 367, at fn. 3. It follows that BancOhio cannot be held liable for any damages awarded for violation of the CSPA by Capital.

■ Likewise, the bank bears no liability for attorney fees and costs. Attorney fees are, generally, not recoverable in absence of statutes authorizing

them. See, generally, *Nottingdale Homeowner's Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 34–37, 514 N.E.2d 702, 704–707; *State ex rel. Fraternal Order of Police v. Dayton* (1977), 49 Ohio St.2d 219, 229, 361 N.E.2d 428, 436. Court costs are generally awarded to the prevailing party unless directed otherwise. Civ.R. 54(D). Although this rule grants the court some discretion to order the prevailing party to bear its own costs, it does not permit such costs to be awarded to a nonprevailing party. *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 555, 597 N.E.2d 153, 156.

█ It has previously been determined that there has been no violation of RISA or CSPA by BancOhio in this case. Neither appellee nor the court below cite any further statutory authority to sanction an award of attorney fees and we are not aware of any. It also bears mentioning that BancOhio has prevailed, on appeal, in prosecuting its counterclaim and defending against those claims brought by appellee. Thus, the bank should not be held liable for court costs. The second and third assignments of error are, for these reasons, sustained.

We next consider BancOhio's sixth assignment of error, wherein it is argued that the lower court erred in awarding both a rescission of the transaction and money damages to appellee without requiring her to make an election between the two remedies. In that we have already ruled in favor of BancOhio on appellee's claims, the issue of an election between available remedies is moot. The assignment of error will, therefore, be disregarded pursuant to App.R. 12(A)(1)(c).

In BancOhio's fifth assignment of error, and in Capital's fourth, appellants argue over whether the lower court correctly ruled in favor of Capital on the cross-claim brought by BancOhio. As mentioned before, this cross-claim sought indemnification from Capital for any damages adjudicated against the bank on the complaint and for any damages BancOhio failed to recover on the counterclaim. In light of our determination that BancOhio may recover on its counterclaim and is not liable on appellee's claims, the issue is now moot and these assignments of error will also be disregarded.

█ We now turn to Capital's first assignment of error, wherein the dealership argues that the lower court erred in ruling that it had violated the CSPA by failing to tender replaced parts to appellee. The lower court never specified the exact regulation which it determined to have been violated and gave only a general reference to Ohio Adm.Code Chapter 109:4–3 in its judgment entry. Presumably, the court relied on the following subsection of Ohio Adm.Code 109:4–3–13:

"(C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:

" * * *

"(13) Fail to tender to the consumer any replaced parts, unless the parts are to be rebuilt or sold by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service[.]"

The uncontroverted evidence adduced at the trial below was that appellee paid $25 for repair of a broken flywheel. Kenneth Alderson, owner of the dealership, testified that all other repairs were covered under the service contract or "picked up" by Capital. William Steinbrook, Service Manager at Capital, conceded that appellee was never given back the parts replaced in her car. Steinbrook explained that parts were not returned to customers unless they were requested. A sign was posted at the dealership to alert customers that replaced parts were "available upon request." Appellee never asked for the parts and they were never returned.

Capital argues that its policy of returning parts upon request satisfies the requirement of tender of the administrative regulations. We disagree. "Tender" generally means to offer or hold something out, especially in fulfillment of the requirements of law. Oxford Universal Dictionary (3 Ed.Rev.1955) 2148. Capital did not offer or hold out the replaced parts to appellee. At the very least, this would require that a mechanic proffer those parts in person to a customer. Capital merely placed a sign alerting customers that parts would be returned on request. This impermissibly placed the onus on the customer to take affirmative action to retrieve the parts and failed to satisfy the requirement of tender.

■ Capital also argues that the pertinent regulation excuses tender of the replaced part if, among other things, the part is to be returned to the manufacturer in connection with warranted repairs and the customer is made aware of that fact. Capital then directs our attention to Steinbrook's testimony that "any time we make a repair and it is covered by a contract, we have to save the parts for the warranty company, in case they call for them." Capital concludes that this need to retain the parts excuses it from the requirement of tender. Again, we disagree. Steinbrook's testimony was that the parts were being *saved* in case the warranty company needed them. There is no indication that the parts were definitely going to be shipped to the manufacturer as allowed by regulation. Moreover, Capital cites nothing in the transcript that suggests that appellee even had knowledge of that fact.

■ Finally, Capital asserts that the failure to return the replaced parts is classified as a deceptive sales practice only if the anticipated cost of repair exceeds $25. Capital then cites evidence that appellee never spent more than $25 on repairs and concludes that there has been no breach of regulations. We are not persuaded. The plain and unambiguous language in Ohio Adm.Code 109:4–3–13(C) is that any of the sixteen actions enumerated therein, concerning the repair or service of a motor vehicle, are *per se* deceptive acts or practices. There is no limit specified in this subsection above which the cost of repair must go before the provision becomes operative.

Capital cites *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 825, 586 N.E.2d 1113, 1120, wherein the Hamilton County Court of Appeals ruled that Ohio Adm.Code 109:4–3–13, in its entirety, applies only where the anticipated cost to the consumer for repair or service exceeds $25. We decline to follow this ruling. The court in *Funk* cites no particular portion of the regulation as authority for its position but appears to rely on language it quotes from subsection (A). A close review of the regulation indicates that each subsection operates independently of the other. Thus, subsection (A) describes certain actions that are deemed deceptive and subsection (C) delineates other actions with the same characterization. The actions specified in subsection (A) are deemed deceptive practices only if the cost of repair or service goes beyond $25. By contrast, there has been no similar cost limit written into subsection (C).[5] These two subsections operate independently of each other and should not be confused. Accordingly, we decline to follow the holding in *Funk* and Capital's first assignment of error is overruled.

■ The second assignment of error of the dealership is that the lower court erroneously held it liable for appellee's attorney fees. Ohio law permits a court to award a consumer her legal fees if a supplier has knowingly committed an act or practice which violates the CSPA. R.C. 1345.09(F)(2). We have already affirmed the lower court's determination that a violation of administrative regulations under the CSPA has occurred. Capital now argues that there was no showing of an intentional violation so as to justify an award of attorney fees. We disagree.

The Ohio Supreme Court has ruled that attorney fees may be awarded pursuant to R.C. 1345.09(F)(2) when a supplier intentionally committed the deceptive act or practice. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933, syllabus. However, the court has rejected any notion that the

---

5. If a $25 cost limit did apply to those actions enumerated in Ohio Adm.Code 109:4–3–13(C), then there would have been no need to make any further references to the limit, as was done in subsection (C)(3).

statute requires a demonstration of knowledge that the act or practice violates the law. *Id.* at 29–30, 548 N.E.2d at 935–936. The legislative purpose of the CSPA "is better safeguarded by finding that 'knowingly' committing an act or practice in violation of R.C. Chapter 1345 means that the supplier need only *intentionally do the act that violates the [CSPA]*. The supplier does not have to know that his conduct violates the law * * *." (Emphasis added.) *Id.* at 30, 548 N.E.2d at 936. Testimony by Steinbrook reveals that the replaced parts were not tendered to appellee because of Capital's policy not to do so unless requested by the customer. This indicates that Capital intentionally did the act (*i.e.,* followed its own policy) which violated the regulations. An award of attorney fees was, therefore, permissible. Capital has not asserted that there was any abuse of discretion in awarding those fees, or in determining the amount thereof, and we do not address the issue. The second assignment of error is overruled.

In summary, the judgment is affirmed as to Capital, except that the damages specified therein are modified and reduced from $505.83 to $200. The judgment is reversed as to BancOhio and that portion of the entry holding it jointly and severally liable for damages, attorney fees and court costs is hereby vacated. Judgment is rendered in favor of the bank on its counterclaim and the cause is remanded for further proceedings to determine the amount of that judgment.

*Judgment affirmed in part as modified,*
*reversed in part*
*and cause remanded.*

GREY and PETER B. ABELE, JJ., concur.