**WILTSIE, Appellee and Cross–Appellant,**

**v.**

**TEAMOR, Appellant and Cross–Appellee.**

[Cite as *Wiltsie v. Teamor* (1993), 89 Ohio App.3d 380.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62875.

Decided Aug. 16, 1993.

*Gibson, Harkins & Brelo* and *Robert A. Boyd,* for appellee and cross-appellant.
*Teamor & Agyeman* and *Kojo O. Agyeman,* for appellant and cross-appellee.

JAMES D. SWEENEY, Judge.

Defendant-appellant Bari Teamor appeals the verdict of the trial court which granted judgment in the amount of $2,800 for plaintiff-appellee Joseph Wiltsie. The appellee has also filed a cross-appeal.

Wiltsie filed suit on June 1, 1989, to recover his security deposit from his landlord, Teamor. On February 28, 1991, the appellant filed a motion to dismiss. Appellee filed a brief in response, and requested sanctions under Civ.R. 11 and R.C. 2323.51. On May 5, 1991, the judge overruled the motion to dismiss and appellee's request for sanctions. Subsequently, a trial to the bench was had, and the court issued the following findings of fact and conclusions of law on November 4, 1991:

"I. FINDINGS OF FACTS

"1. Plaintiff entered the premises of Defendant on or about June 1, 1989 as a month-to-month tenant evidenced in a Rental Application.

"2. Plaintiff stated that on December 27, 1989 he met defendant at what is known as the Beachwood Mall and informed her at that time of his vacating during January, 1990. He also stated that at the same time he gave her his business card on which he wrote his new address. Defendant claims that the meeting took place on December 29, 1989, but denies receiving any information about plaintiff moving, and denies receiving the business card. Nevertheless, defendant came to the premises on January 2, 1990 to inspect the property and immediately placed advertising to re-rent the house. Defendant admits that she did receive notice on January 2, 1990.

"3. A defense witness, SCOTT LAMPKINS, testified that Mrs. Teamor called him in late December, 'After Christmas,' to inspect the house. He further stated that he met her there and found a ceiling crack to be repaired, painting required in the dining room, a wall crack, baseboards needing painting and repairs.

"4. Mr. Lampkins presented defendant with a bill for services performed from January 13, 1990 to January 20, 1990. Accompanying his bill was a receipt from 'Dunn Hardware' for various materials. Said receipt was dated January 25, 1990 or five days after the date the witness testified he worked as shown on his bill. Also the bill contained items such as an 'oval spring tension rod,' a 'graber', 'screws bolts anchors.' Mr. Lampkins explained that those items referred to repairs he made to a dishwasher in the basement. No evidence was presented that plaintiff had any part in the use of said dishwasher. No mention is made for any damages resulting to floors or ceilings from a waterbed leak. He did mention ceiling cracks and water stains, but was unsure if they were water stains.

Mr. Lampkins further testified that his regular occupation was as a manager with Cleveland Twist Drill Co. Mr. Lampkins' total bill was in the amount of $290.00.

"5. On January 17, 1990 defendant received an application to rent the premises to one Michael M. Hughes. The application stated the suite would be available on February 15, 1990, but defendant states occupancy did not take place until March 1, 1990.

"6. At some time on or about August, 1990 defendant, following numerous requests, * * * 'faxed' an itemization of the damages claimed, approximately 6 months later than required under law.

"7. The periodic rental date was established as the 1st of each month. With respect to the payment and notice at issue, the 1st Day of January, 1990 was a legal holiday as defined in R.C. Sec. 1.14.

"II. CONCLUSIONS OF LAW

"1. Defendant cites Civ.Rule 6 as being applicable to the case *sub judice*. This court finds that Civ.Rule 6 is a rule of procedure in the courts of this State provided there is no conflict with the Statutes. Here defendant proposes an interpretation which would be definitely in conflict with a special statute related to Landlord–Tenant law. The court herein finds that the time for notice dictated by R.C. Sec. 5321.17(B) is as stated in said statute. It is admitted by defendant that she had notice on January 2, 1990 and immediately acted upon that information by causing publication of an advertisement for the suite being vacated. Defendant disputes plaintiff's contention that he gave written notice in the form of his business card upon which he wrote his forwarding address. However, defendant did not indicate a previous conversation relative to this subject with plaintiff, her appearance on January 2, 1990 with no advance arrangement lends, in the court's opinion, credence to plaintiff's contention. But even if the court were to disregard this contention, plaintiff would nevertheless [have] acted within the prescribed time. According to the statute, January 1st being a holiday, the thirty-day period would commence to run as of January 1, 1990, but the statute permits compliance by performing the act on January 2, 1990. This would mean that the thirty day period in a 31 day month as is January would under any interpretation constitute the 30 day period required, i.e. January 2 through January 31 would be thirty days. Furthermore, the periodic rent date would have to be construed as February 1, 1990, which enforces further compliance with the 30 day requirement. In addition, the court is inclined to place credence in the plaintiff's testimony that he gave notice December 27, 1989. In either event, defendant was properly notified.

"2. The court further finds that defendant failed to abide by conditions of R.C. Sec. 5321.16(A) by not furnishing a statement of claimed damages within the 30

day period as provided in the statute. In fact, the landlord delayed such notice for approximately six months. Under the said statute, the landlord may not recover damages.

"3. After consideration of services performed by plaintiff's counsel, the nature of legal services, lack of complexity of the issues, the court herein awards attorney fees to Attorney Robert A. Boyd in the sum of $1,500.00.

"WHEREFORE, the court enters judgment in favor of plaintiff, Joseph Wiltsie, against defendant, Bari Teamor, in the sum of Thirteen Hundred Dollars ($1,300.00) plus attorney fees (1,500.00) for benefit of Robert A. Boyd attorney for plaintiff, and plus costs and interest upon total judgment of Twenty-eight Hundred Dollars ($2800.00)."

On November 8, 1991, subsequent to the court's award of judgment, the appellee filed a motion to tax deposition expense as court costs. On January 7, 1992, the court issued the following order denying appellee's motion:

"Following a review of the content of the deposition taken of Defendant, it is the opinion of the court that for this court to award to Plaintiff the cost of such deposition would constitute an abuse of discretion.

"Plaintiff's claim was in the sum of $650.00 for failure of defendant to refund a security rent deposit. A similarly minor amount was subject of a counterclaim. A review of the deposition reveals no evidence which could most readily [have] been obtained through interrogatories or by calling the defendant to testify as on cross-examination.

"As is often referred to by lawyers, it became a 'federal case.' Not only by reason of such an extensive deposition, but the fact that trial of the case consumed the better part of three days of trial time.

"It would be unconscionable for this court to allow as costs a charge of $431.00 for taking a deposition in a case involving $650.00. In addition a good deal of the information sought at the deposition hearing was already known to Plaintiff through exchange of correspondence and other exhibits.

"The motion to tax deposition costs is overruled."

On December 3, 1991, the notice of appeal was filed by the appellant. The appellee filed an affidavit in aid of execution on December 16, 1991, and on January 9, 1992, the appellant filed a motion to stay execution of judgment pending appeal, and a supersedeas bond. The docket reflects that on January 10, 1992, the court received the sum of $2,214.14 to be held on deposit for order. Also on January 10, 1992, appellee made a demand for payment of the money on deposit with the clerk, moved for an order releasing funds, and requested an oral hearing. On January 15, 1992, the court denied appellee's motions:

"Defendant's motion to stay execution of judgment pending appeal is herein granted. It is further ordered that supersedeas bond in sum of $4,000.00 is approved to stay execution of judgment pending appeal.

"Funds seized from defendant in sum of $2200.00 are to be returned to defendant upon finding that plaintiff is adequately protected by the bond.

"It is apparent to the court that plaintiff was aware of the pending appeal when seizure was made.

"So ordered this 15th day of January, 1992."

This court will first consider the five assignments of error of the appellant, and will then entertain the appellee's cross-assignments of error.

Appellant's first, second, third, fourth and fifth assignments of error are as follows:

## I

"The trial court's finding that Wiltsie gave notice to terminate at the Beachwood Mall on December 27, 1989 is against the manifest weight of the evidence."

## II

"The trial court erred to the prejudice of appellant in finding that if Wiltsie gave notice on January 2, 1990, plaintiff nevertheless acted within the prescribed time."

## III

"The trial court erred to the prejudice of appellant in finding that appellant failed to abide by the conditions of R.C. § 5321.16(A) by not furnishing a statement of claimed damages within thirty (30) days when appellee had not provided a forwarding address in writing."

## IV

"The trial court erred to the prejudice of appellant in penalizing her as to the full amount of security deposit and in failing to make a determination as to whether appellant wrongfully withheld all or part of the security deposit."

## V

"The trial court erred to the prejudice of appellant in awarding attorney fees without first hearing evidence on the reasonableness of the fees."

██ What must comprise a record for purposes of appeal is set forth in App.R. 9. The appellant bears the responsibility for ensuring that any portions of the transcript of the proceedings which are necessary for review are transmitted to the court of appeals as a part of the record. App.R. 9(B) states as follows:

"The Transcript of Proceedings; Duty of Appellant to Order; Notice to Appellee if Partial Transcript Is Ordered. At the time of filing the notice of appeal the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record and shall file a copy of said order with the clerk. The reporter is the person appointed by the court to transcribe the proceedings for the trial court whether by stenographic, phonogramic, or photographic means, or by the use of audio electronic recording devices, or by the use of video recording systems. If there be no officially appointed reporter, Rule 9(C) or 9(D) may be utilized. If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, he shall include in the record a transcript of all evidence relevant to such findings or conclusion."

In addition, Loc.App.R. 4 states in part:

"Appellate Rule 9(B) describes a court reporter as 'the person appointed by the court to transcribe the proceedings * * *.' When a reporter is used to record the events at trial, the record must reflect that reporter's appointment by the trial court for such purpose. If an official court reporter is not then under contract to the court, the Court shall appoint a professional court reporter on a case by case basis. This may be done by sua sponte entry of the court or on motion of a party in the case."

██ It is evident that where a transcript will be required for an adjudication of an appeal, and there is no court reporter under contract to transcribe the trial, the litigants bear the burden of ensuring that the court appoint a professional court reporter. In the case *sub judice,* no steps were taken by the litigants, or the judge *sua sponte,* to appoint a court reporter. The transcript submitted by the appellant may not be considered by this court. *In re Estate of Ross* (Nov. 24, 1989), Geauga App. No. 88–G–1480, unreported, 1989 WL 143203.

██ This court has consistently followed the mandate of *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384, where the court held:

"When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the

validity of the lower court's proceedings, and affirm." *Id.* at 199, 15 O.O.3d at 220, 400 N.E.2d at 385.

As there is no transcript which would allow review of appellant's five assignments of error, this court has no choice but to presume the validity of the lower court's findings.

Appellant's first, second, third, fourth and fifth assignments are overruled.

Appellee's first cross-assignment of error states as follows:

"The trial court erred to the prejudice of appellee when it denied appellee's motion to tax the expense of a single deposition as court costs."

The dispositive issue is whether the $431 for taking a deposition was actually a taxable "cost" within the meaning of Civ.R. 54(D). As stated in Civ.R. 54(D):

"Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

In *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 597 N.E.2d 153, the Supreme Court considered the issue of costs. The trial court had awarded costs pursuant to a local rule, and a portion of these costs were deposition expenses. The Supreme Court disallowed these costs, and set forth the following definition:

"[T]he definition of 'costs' in Loc.R. 2.53(Z)(4) conflicts with our holding in *Centennial Ins. Co. v. Liberty Mut. Ins. Co.* (1982), 69 Ohio St.2d 50, 23 O.O.3d 88, 430 N.E.2d 925. In that case we held:

" 'This court has consistently limited the categories of expenses which qualify as "costs." "Costs, in the sense the word is generally used in this state, may be defined as being the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action * * * and which the statutes authorize to be taxed and included in the judgment * * *. * * * Costs did not necessarily cover all of the expenses and they were distinguishable from fees and disbursements. They are allowed only by authority of statute * * *." ' *State, ex rel. Commrs. of Franklin County, v. Guilbert* (1907), 77 Ohio St. 333, 338–339 [83 N.E. 80, 81], quoted, in part, with approval in *Benda v. Fana* (1967), 10 Ohio St.2d 259, 262–263 [39 O.O.2d 410, 413, 227 N.E.2d 197, 200–201].

" 'Today, we reaffirm the principle that "[t]he subject of costs is one entirely of statutory allowance and control." *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 607 [60 O.O. 531, 535, 138 N.E.2d 660, 666], quoted with approval in *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179 [75 O.O.2d 224, 225, 347 N.E.2d 527, 529]. * * *' *Id.,* 69 Ohio St.2d at 50–51, 23 O.O.3d at 89, 430 N.E.2d at 926." *Id.,* 64 Ohio St.3d at 555, 597 N.E.2d at 156.

■ Thus, absent explicit statutory authorization, litigation expenses may not be properly taxed as costs.

Several appellate districts have cited *Vance.* However, their decisions can be distinguished on the basis that those courts focused on extraneous factors set forth in the *Vance* decision rather than its actual holding.

In *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 623 N.E.2d 177, the court interpreted *Vance* as holding that "[c]ourt costs are generally awarded to the prevailing party unless directed otherwise." Again, in *Kenney v. First Natl. Bank of Southwestern Ohio* (May 16, 1993), Franklin App. No. 92AP–1602, 1993 WL 150511, the court, relying on *Vance,* stated that the "language of Civ.R. 54(D) grants the court discretion to order the prevailing party to bear all or part of his costs."

*Cincinnati ex rel. Simons v. Cincinnati* (1993), 86 Ohio App.3d 258, 267, 620 N.E.2d 940, 946, found that *Vance* defined costs to "include ' "the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action." ' " However, the *Cincinnati* court went on to allow expenses for court reporters and technicians by expanding the meaning of the statute to consider those positions as "officers."

Finally, in *Hagemeyer v. Sadowski* (1993), 86 Ohio App.3d 563, 566, 621 N.E.2d 707, 709, the court's reading of *Vance* limited its holding, and stated that the "trial court is empowered to award costs only to a prevailing party." The court went on to state that under *Vance,* only "taxable litigating expenses" rather than "personal expenses" could be awarded as costs.

■ None of the above-cited decisions recognizes the actual holding of *Vance* which allows for costs only when they are explicitly authorized by statute. We know of no statute which allows deposition expenses to be awarded as costs.

In the case *sub judice,* appellee seeks $431 for the taking of a single deposition. There is no explicit statutory authorization to tax such a cost. Thus, the expense of the deposition cannot be properly taxed as costs.

Appellee's first cross-assignment of error is overruled.

Appellee's second cross-assignment of error is as follows:

"The trial court erred to the prejudice of appellee when it ordered the clerk of courts to release to appellant the sum of $2,200.00 which had been transmitted to the clerk of courts in response to appellee's affidavit and order in aid of execution."

■ Appellee contends that once the funds from appellant's bank account had been transmitted to the Clerk of Court pursuant to the affidavit in aid of execution, the funds should have been released to the appellee, not the appellant.

The appellee does not argue that the court abused its discretion in issuing the stay, but does contend that the judge could not halt the execution once it was in process.

Civ.R. 62(B) provides for a stay pending appeal:

"Stay Upon Appeal. When an appeal is taken the appellant may obtain a stay of execution of a judgment or any proceedings to enforce a judgment by giving an adequate supersedeas bond. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court."

And R.C. 2505.09 directs that the filing of an appeal does not operate as a stay of execution:

"Except as provided in section 2505.11 or 2505.12 or another section of the Revised Code or in applicable rules governing courts, an appeal does not operate as a stay of execution until a stay of execution has been obtained pursuant to the Rules of Appellate Procedure or in another applicable manner, and a supersedeas bond is executed by the appellant to the appellee, with sufficient sureties and in such sum, not less than, if applicable, the amount of the final order, judgment, or decree and interest involved, as is directed by the court that rendered the final order, judgment, or decree that is sought to be superseded or by the court to which the appeal is taken. Such bond shall be conditioned as provided in section 2505.14 of the Revised Code."

In the case *sub judice,* the appellant filed a motion to stay prior to the funds being transferred by the bank to the Clerk of Court. The motion was not ruled on for five days, and in the interim the appellee made both a demand for the funds and a motion for an order releasing the funds, and requested an oral hearing. The judge did not specifically rule on these motions, and they are therefore deemed denied. *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 561 N.E.2d 1001; *Shillman v. Frankel* (July 7, 1988), Cuyahoga App. No. 54086, unreported, 1988 WL 87648.

Although no stay was in effect until such time as the court actually granted appellant's motion, once the stay was issued no funds should have been released to either party. A stay requires that all activity cease, including transference of funds from the Clerk of Court. Although the trial judge perhaps committed a technical error by releasing funds to the appellant, the error is harmless as the appellee is protected by an adequate supersedeas bond.

Appellee's second cross-assignment of error is overruled.

Appellee's third cross-assignment of error is as follows:

"The trial court erred to the prejudice plaintiff [*sic*] of appellee when it denied a motion for the imposition of Rule 11 sanctions and attorney fees for frivolous conduct under Section 2323.51 of the Revised Code."

■ The trial court did not err in denying the motion for Civ.R. 11 sanctions against appellant for the filing of the motion to dismiss. Civ.R. 7(B)(4) states that all motions shall be signed in accordance with Civ.R. 11. In *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966, the Supreme Court held that the decision to impose sanctions under Civ.R. 11 lies within the sound discretion of the trial judge, and absent such abuse the decision will not be reversed. See, also, *Harris v. Southwest Gen. Hosp.* (1992), 84 Ohio App.3d 77, 616 N.E.2d 507. In the present case, the trial court did not abuse its discretion in denying the request for sanctions pursuant to Civ.R. 11.

■ When sanctions are requested pursuant to R.C. 2323.51, the court also has wide discretion in determining whether to grant the request. However, this court has held that once a motion for attorney fees based on frivolous conduct has been filed, the court must conduct a hearing. The failure to conduct a hearing on the motion is an abuse of discretion. *Bradley Assoc., Ltd. v. Agri World Trade Dev. Corp.* (1991), 76 Ohio App.3d 699, 602 N.E.2d 1264.

The issue of sanctions pursuant only to R.C. 2323.51 is remanded to the trial court for hearing.

Appellee's fourth cross-assignment of error states:

"The trial court erred in reducing appellee's attorney fees."

Pursuant to the determination of the appellant's fifth assignment of error, this assignment is rendered moot. App.R. 12.

The judgment is affirmed in part and reversed in part, and the cause is remanded.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

HARPER and NUGENT, JJ., concur.