JOURNAL ENTRY and OPINION
Plaintiff-appellant Dennis E. Scanlon appeals from the trial court's granting a directed verdict in favor of defendant-appellee Fox Auto, Inc., dba Tuffy Auto Repair Service ("Tuffy"). We find no merit to the appeal, and therefore we affirm.
Scanlon filed a complaint against Tuffy claiming that Tuffy violated the Ohio Consumer Sales Practice Act. He claimed it failed to use a proper form in giving him a written estimate of repairs and that it failed to return a replaced part from his truck, both of which he claimed violated the Consumer Sales Practice Act. He also claimed that Tuffy was negligent in repairing his truck.
The trial court denied Tuffy's motion for summary judgment. Prior to the commencement of trial, Scanlon's counsel agreed to dismiss Joseph Fox from the case.
In the late summer of 1994, Scanlon purchased a used 1990 Chevy truck with 69,000 miles. In November 1998, the exhaust system began leaking. Since he had auto mechanic experience, he attempted to repair the exhaust himself but was unable to complete the repair, so he took the truck to Tuffy.
A few days later, Joseph Fox advised him that the repairs were completed. At the time of pickup, Scanlon also informed Tuffy that the vehicle needed an oil pan replacement. Fox informed him that Tuffy could perform this repair. On the bottom of Scanlon's estimate form for the exhaust system repair, Fox handwrote an estimate of $181.09 to replace the oil pan. Scanlon then purchased a new oil pan and left it with the truck at Tuffy's for replacement. Upon being notified that the repair was completed, Scanlon towed his truck home.
The next day, Scanlon was driving the truck and heard a knocking noise. He took the truck back to Tuffy. After inspecting the truck, Fox informed Scanlon that the motor's rod bearing was damaged and that it was unrelated to any of the other repairs. Scanlon testified that he inspected the engine and it was his opinion the damage was caused by Tuffy's negligent repair work.
Several days later, Scanlon returned and informed Fox that he wanted him to replace the engine at Tuffy's expense. Fox refused, stating that he did not damage the engine. Scanlon then called Tuffy's national customer service telephone number to complain. According to Fox, the company then called him and told him to retain the oil pan so that a sample of the oil could be tested to determine if the rod bearing was disintegrating before the oil pan was replaced. Thereafter, Scanlon demanded the return of his replaced oil pan, but Fox refused to return it at that time, informing him that the company needed to take an oil sample first.
The test result revealed that the bearing was disintegrating before the pan was replaced. Fox then offered to return the oil pan to Scanlon, but it was not picked up until Scanlon had retained counsel.
The trial court granted Tuffy's motion for a directed verdict on Scanlon's Consumer Sales Practice Act claims but submitted Scanlon's negligence claim to the jury. The jury found that Tuffy was not negligent.
The trial court denied Scanlon's motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial. Scanlon now appeals, asserting two assignments of error.
 I. THE COURT ERRED IN GRANTING A MOTION FOR A DIRECTED VERDICT WITHOUT ARTICULATING ANY BASIS FOR GRANTING THE MOTION.
Scanlon contends the trial court erred by not stating its reasons for granting Tuffy's motion for a directed verdict. Scanlon, however, failed to raise the issue before the trial court. Therefore, any error in the trial court's failure to state its reasons for granting the directed verdict is waived. Campbell v. Pritchard (1991), 73 Ohio App.3d 158.
Scanlon's first assignment of error is overruled.
 II. PLAINTIFF WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DIRECTED A VERDICT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S CONSUMER VIOLATION COMPLAINTS.
The applicable standard of review of a directed verdict is set forth in Civ.R. 50(A)(4) as follows:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
This rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285.
Although a motion for a directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 68-69. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
R.C. 1345.05 mandates the Ohio Attorney General to promulgate rules which define, with reasonable specificity, acts or practices which violate R.C. 1345.02. Ohio Adm. Code 109:4-3-13 regulates motor vehicle repairs and services and states in pertinent part:
 (A) It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer or his representative and the supplier or his representative, prior to the commencement of the repair or service for a supplier to:
 (1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated costs of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:
"ESTIMATE
 YOU HAVE THE RIGHT TO AN ESTIMATE IF THE EXPECTED COST OF REPAIRS OR SERVICES WILL BE MORE THAN TWENTY-FIVE DOLLARS. INITIAL YOUR CHOICE:
 ___ written estimate ___ oral estimate ___ no estimate"
Scanlon claims that Tuffy violated the Consumer Sales Practice Act by failing to use a form as described in OAC 109:4-3-13(A)(1) in providing its written estimate for replacing the oil pan. Although we agree the handwritten note on the bottom of the original estimate does not comply with the strict requirements of OAC 109:4-3-13(A)(1), we find no deceptive trade practice in Tuffy's providing the estimate in this manner. As the court in Funk v. Montgomery AMC/Jeep/Renault (1990),66 Ohio App.3d 815, 823, in addressing a Consumer Sale Practice violation, stated:
 R.C Chapter 1345, the Ohio Consumer Sales Practices Act, sets forth the standards of conduct for the supplier of consumer goods. R.C. 1345.02 makes actionable certain practices which it characterizes as deceptive. It is important to note that violation of R.C. 1345.02
does not require either intent or knowledge on the part of the alleged perpetrator; rather, it is sufficient that the conduct complained of "has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." Brown v. Bredenbeck (C.P. 1975), 2 O.O.3d 286, 287; see, also, Thomas v. Sun Furniture Appliance Co., (1978), 61 Ohio App.2d 78, 15 O.O.3d 92, 399 N.E.2d 567.
Scanlon admitted at trial that the amount quoted was the amount he was charged. In fact, Scanlon testified that "I'm not claiming that I didn't get an estimate. There is no dispute about getting an estimate or not getting an estimate. My dispute is that my engine was damaged. I don't know where or who's concerned about estimates here." (TR. at 118-119).
Given Scanlon's own statement that he did not have a claim regarding the written estimate, the granting of a directed verdict as to this claimed violation was proper. There was no evidence that he was induced into a "belief that was not in accord with the facts."
Scanlon also contends that Tuffy violated the Consumer Sales Practice Act by failing to tender to him the replaced oil pan. OAC 109-4-3-13(C)(13) states as follows:
 (C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to:
* * *
 (13) Fail to tender to the consumer any replaced parts, unless the parts are to be rebuilt or sold by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service.
Fox admitted at trial that he never asked if Scanlon wanted the old parts returned. The repair form signed by Scanlon contained a section for the customer to indicate whether the old parts were to be returned. Scanlon signed his name in this section but claimed he did not read it. He did not mark either box indicating whether or not he wanted old parts returned.
We find that the form contained a section which constituted a "tender" to return the parts as required in OAC 109-4-3-13(C)(13). The court in Vannoy v. Capital Lincoln-Mercury Sales (1993), 88 Ohio App.3d 138, addressed the same Ohio Administrative Code section. In that case, the car repair shop had a sign which alerted customers that replaced parts were "available upon request." The court in that case found that the sign did not constitute a tender and held:
 "Tender" generally means to offer or hold something out, especially in fulfillment of the requirements of the law. Oxford Universal Dictionary (3 Ed.Rev. 1995) 2148. Capital did not offer or hold out the replaced parts to appellee. At the very least, this would require that a mechanic proffer those parts in person to a customer. Capital merely placed a sign alerting customers that parts would be returned on request. This impermissibly placed the on us on the customer to take affirmative action to retrieve the parts and failed to satisfy the requirement of tender.
Id. at 147.
However, in the present case, Scanlon signed the form in the section relating to return of parts and left the box blank; therefore, the form did contain a "tender" by Tuffy. Furthermore, Tuffy did eventually tender the replaced oil pan to Scanlon after testing it. Thus, we find no violation of the Consumer Sales Practice Act and the trial court correctly directed a verdict on this claim.
Scanlon's second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J., and TERRENCE O'DONNELL, J., CONCUR.